| | |
|---|---|
| | HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANDERSON & MIDDLETON COMPANY, a Washington Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>HON. KEN SALAZAR, in his official capacity as Secretary, United States Department of the Interior; HON. CARL ARTMAN, in his official capacity as Assistant Secretary, Indian Affairs, United States Department of the Interior; and STANLEY M. SPEAKS, in his official capacity as Regional Director, Bureau of Indian Affairs, United States Department of the Interior, and John Does 1 through 20,<br><br>    Defendants. | Civil No.: 3:09-cv-05033-RBL<br><br>ORDER GRANTING IN PART AND DENYING IN PART QIN'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| QUINAULT INDIAN NATION,<br><br>    Plaintiff,<br><br>    v.<br><br>HON. KEN SALAZAR, in his official capacity as Secretary, United States Department of the Interior; HON. CARL ARTMAN, in his official capacity as Assistant Secretary, Indian Affairs, United States Department of the Interior; and STANLEY M. SPEAKS, in his official capacity as Regional Director, Bureau of Indian Affairs, United States Department of the Interior, and John Does 1 through 20,<br><br>    Defendants. | |

ORDER
Page - 1

This matter comes before the Court on Plaintiff Quinault Indian Nation's Motion for Summary Judgment and Defendant Secretary of the Interior's Cross-Motion for Summary Judgment. For the reasons that follow, QIN's Motion is GRANTED IN PART AND DENIED IN PART and the Defendant's Cross-Motion is GRANTED IN PART AND DENIED IN PART.

## *I. Summary*

This case involves the bidding process for the sale of 26 parcels of tribal land owned by individual members of the Quinault Indian Tribe.[1] The question before the Court is whether the Bureau of Indian Affairs (BIA) acted arbitrarily and capriciously in its management of the bidding process or its subsequent forfeiture of the Quinault Indian Nation's (QIN) deposit and right to purchase certain of the parcels.

QIN and Anderson & Middleton Company (A&M) participated in the bidding process for the parcels. A&M bid on 20 of the parcels and QIN bid on all 26 parcels. The BIA determined that although A&M was the high bidder on the 20 parcels, QIN had the right to match that bid and purchase all 26 parcels.[2] Both parties appealed. QIN claimed it had the right to purchase at "fair market value" without having to first match A&M's high bid. A&M argued that it was the high bidder and that QIN did not have the right to match.

The Interior Board of Indian Appeals (IBIA) upheld the BIA's determination on both issues. QIN and A&M each sued the Secretary of the Interior, having authority over the Bureau of Indian Affairs (hereafter "Government"), asking this Court to overturn the IBIA's decision.[3]

---

[1] The United States government is the legal owner of the property, but holds it in trust for landowner Helen Sanders and a number of other individual Quinault tribal landowners. Ms. Sanders is the spokesperson for the group.

[2] QIN's right to purchase the other 6 parcels is not at issue here.

[3] QIN and A&M each filed lawsuits seeking to overturn the IBIA's decision. A&M's lawsuit was filed under Cause No. 09-5033-RBL. QIN's lawsuit was filed under Cause No. 09-5064-RBL. On March 18, 2009, the cases were consolidated. [Dkt. #13]. This Order resolves both appeals, as well as issues that arose after the IBIA decision.

ORDER
Page - 2

QIN argues that the BIA's handling of the bidding process was arbitrary and capricious and that QIN should have been permitted to purchase the parcels at appraised fair market value, without having to participate in the bidding process. A&M argues that QIN was improperly afforded the right to match A&M's bid price under applicable regulations governing sales of Native American trust land. The Government argues that the IBIA decision was proper because the BIA's actions pertaining to the sale were not arbitrary or capricious.

The Court is satisfied that the IBIA's decision affirming the BIA's determination was correct. The remaining issue is whether QIN's failure to timely tender the purchase price for the 20 parcels results in a forfeiture of its right to purchase those parcels. Both the Government and A&M contend that QIN forfeited both its deposit and its statutory right to match A&M's bid when it failed to file either its Motion for a Temporary Restraining Order (TRO) or tender the remaining balance on the 20 parcels within the Agency imposed 30-day payment period, which ended on February 17, 2009.

QIN filed its Complaint with this Court on February 4, 2009 [CV09-5064-RBL, Dkt. #1]. Upon QIN's failure to pay by February 17, 2009, the BIA began the process of forfeiting QIN's deposit and granting A&M the right to purchase the 20 parcels on which A&M had bid. [Dkt. #28 at 5]. QIN filed its TRO Motion on February 18, 2009. [CV09-5064-RBL, Dkt. #9]. The Court granted QIN's TRO Motion, enjoining the forfeture of QIN's deposit and the pending sale of the 20 contested parcels to A&M, on March18, 2009. [CV09-5064-RBL, Dkt. #16].

Both the Government and A&M argue that QIN forfeited its right to the 20 parcels because it failed to satisfy the purchase price, file its TRO, or request a payment extension, on or before February 17, 2009. In response, QIN argues that it is entitled to purchase the 20 parcels because the BIA's bidding process was arbitrary and capricious and because QIN's interest in consolidating fractionated tribal land under the Indian Land Consolidation Act (ILCA) and its subsequent amendments should supercede the determination of the Agency. [Dkt. #30].[4]

---

[4] "The Indian Land Consolidation Act (ILCA) of 1983, as amended in 1991, 2000, and 2004, [25 U.S.C. § 2201-2219] is intended in part to eliminate undivided fractional interests in allotments and consolidate tribal land holdings." 1-15 *Cohen's Handbook of Federal Indian Law* § 15.07(2) (2005 ed.).

Having considered all the evidence, the Court holds that the BIA's actions pertaining to the forfeiture were arbitrary and capricious and violated QIN's statutory right to consolidate tribal land.

## *II. Discussion*

**A. Background**

In July of 2006, Quinault tribal member Ms. Helen Sanders applied to the BIA to sell her trust land under 25 U.S.C. § 483. [CV09-5064-RBL, Dkt. # 14]. The BIA organized a public auction for the land, which comprised 26 parcels. While notice of the auction was published in June, 2007, it did not mention QIN or its statutory right to match the highest bid pursuant to 25 U.S.C. § 2216(f). [CV09-5064-RBL, Dkt. #15].[5] Bidding commenced in July, 2007 and all bids were publicly announced on July 14, 2007. QIN bid $4.8 million for all 26 parcels. [CV09-5064-RBL, Dkt. #9, Ex. E] A&M bid $4,391,026 for the purchase of 20 of the 26 parcels. [CV09-5064-RBL Dkt. #13, Ex. P]. A&M made individual, specific bids on 4 of the parcels and a lump-sum offer on the other 16. [CV09-5064-RBL Dkt. #13, Ex. L]. Both A&M and QIN tendered 10% deposits, as required by the BIA bidding procedure.[6]

On July 23, 2007, the BIA determined that (1) QIN was the highest bidder for the six parcels not bid upon by A&M, and (2) that A&M was the highest bidder on the remaining 20 parcels. [CV09-5064-RBL, Dkt. # 4, Ex. IBIA Decision at 7].[7] As is required by 25 U.S.C. § 2216(f), the BIA offered QIN the opportunity to match A&M's bid for the remaining 20 parcels. [*Id.*]. Quinault agreed to match the bid, but did so under protest, claiming that the bidding process and the method used for determining the highest bid were improper. [CV09-5064-RBL, Dkt.#9, Ex. M]. The BIA awarded QIN the right to purchase all 26 parcels for $5,476,415.00. [CV09-5064-RBL, Dkt. #9, Ex. A].[8]

---

[5] As amended in 2004, 25 U.S.C. § 2216(f) provides the Quinault with the right to match any offer removing the trust status or other restrictions on alienation from Indian-owned land.

[6] The Quinault's deposit was $480,000.00 and A&M's depostit was $439,102.60. [CV09-5064-RBL, Dkts. # 9 Ex. A, #13 Ex. P].

[7] The BIA had earlier requested that A&M break down its lump-sum bid on the 16 parcels to determine whether A&M or QIN was the high bidder for each of those parcels. [CV09-5064-RBL, Dkt. #13, Ex. L]. However, the BIA later determined that Quinault's bid as it pertained to these parcels would not be able to exceed that of A&M's regardless of how the bids were itemized out after the fact.

[8] This amount represents the match price for A&M's bid amount for the 20 parcels, $4,391,026.00, plus the $1,085,389.00 bid by the Quinault for the remaining six parcels. [CV09-5064-RBL, Dkt. # 4, Ex. BIA Letter re: 20 Parcels, BIA Letter re: 6 Parcels].

ORDER
Page - 4

Both A&M and QIN appealed the BIA decision. [CV09-5064-RBL, Dkt. # 4] (IBIA Decision). QIN argued that the bid evaluation process was flawed, that the price for all 26 parcels was too high, and that it should have been able to buy the parcels at "fair market value" without having to participate in the bidding process. [*Id.*]. A&M claimed that QIN should not have been permitted to match A&M's bid on the 20 parcels and that A&M should be allowed to purchase these parcels for its original bid price. [*Id*].

The IBIA rejected both parties' arguments and affirmed the BIA's decision to sell the parcels to QIN for $5,476,415.00. [*Id.*]. QIN was given until February 17, 2009 (30 days) to tender full payment.[9] The BIA sent two letters to QIN after the IBIA decision and before the end of the 30-day period regarding payment. The first, dated January 13, 2009, stated that QIN's failure to deposit the remainder of the entire purchase price for the 26 parcels within the 30-day period "may constitute a forfeiture of the 10% [already] deposited." [CV09-5064-RBL, Dkt. # 4, Ex. #3]. The second, sent on January 23, 2009 after A&M filed suit with this Court,[10] reminded QIN of its obligation to tender the entire amount for the 6 parcels not bid on by A&M. The letter also stated that it was unclear "whether [A&M's] potential injunction . . . [would] interfere with the payment process for the [other] 20 tracts."[11] [CV09-5064-RBL, Dkt. #4, Ex. #4].

On February 4, 2009 QIN filed suit challenging the actions of the BIA and the IBIA decision. [CV09-5064-RBL, Dkt. # 1]. Both QIN's suit and A&M's related suit were filed before QIN's payment deadline of February 17, 2009. At the expiration of the deadline, QIN had failed to tender any additional sums to the BIA.[12] On February 18, 2009, QIN filed its TRO Motion to stay the forfeiture of QIN's

---

[9] QIN's remaining balance due is $4,996,415. It is the difference between the final bid price of $5,476,415.00 and the deposit already paid by the Quinault of $480,000.00.

[10] On January 21, 2009, A&M filed suit with this Court challenging the December 30, 2008 IBIA decision. [Dkt. #1].

[11] Both the letters appear to have been sent only to QIN.

[12] When QIN failured to pay within 30 days, the BIA began the process of forfeiting QIN's deposit and selling the 20 parcels to A&M. Because QIN remained the highest bidder on the other 6 parcels, the BIA remained willing to sell QIN these parcels despite the lapse in payment. On March 20, 2009, BIA and QIN stipulated to the sale of the remaining 6 parcels to QIN. [Dkt. #14]. The sale was approved by Order of this Court on March 23, 2009. [Dkt.# 15].

ORDER
Page - 5

deposit and the sale of the 20 contested parcels to A&M pending the outcome of this case. [CV09-5064-RBL, Dkt.# 9]. QIN's TRO motion was granted by this Court on March 18, 2009.[13]

### 1. *A&M's Claims*

A&M argues that it is entitled to purchase the 20 parcels whether or not QIN is able to tender the remaining $4,996,415 still outstanding on the sale. [Dkts. #5, 26]. A&M claims that 25 C.F.R. §§ 152.26 and 152.27 provide for an exception to QIN's statutory right to match under 25 U.S.C. § 2216(f). [Dkt. #26]. They contend that the seller has a right to "opt out" of a match by refusing to consent and that "a methodology exists" [Dkt. #26 at 4] whereby a right to match must be disclosed in the Invitation to Bids if the seller does not opt out. A&M argues that Helen Sanders did in fact exercise her right to opt out and the Invitation to Bid reflected this by omitting any reference to a right to match. Alternatively, it argues that if Sanders did not opt out, the BIA failed to properly disclose the right to match in the Invitation.

A&M also claims that QIN's failure to satisfy the remaining purchase price on the 20 parcels within the 30-day administrative process deadline forfeited QIN's conditional statutory right to match A&M's bid. Specifically, it argues that QIN failed to request an extension of the deadline pursuant to 25 C.F.R. § 152.28(c)(1) and that QIN's TRO Motion, although eventually granted by this Court, was not filed until after the 30-day payment period had already expired. [Dkt. #26 at 2]. A&M argues that it has properly preserved its right as high bidder and seeks to submit the balance of the purchase price for the 20 parcels once the Temporary Restraining Order enjoining the sale is lifted. [Dkt.# 26 at 3].

### 2. *QIN's Claims*

QIN argues that the land consolidation rights afforded it under the Indian Land Consolidation Act (ILCA) and its subsequent amendments (25 U.S.C. § 2201 *et seq.*) do not require it to participate in a public, competitive bidding process to purchase the trust allotments at issue. [Dkt. #25 at 2]. QIN also

---

[13] In its Order Granting QIN's Motion for TRO, this Court acknowledged that the February 17, 2009 deadline had already passed but nonetheless stayed the forfeiture of QIN's deposit and the sale of the 20 contested parcels to A&M until a decision was reached on the merits. [CV09-5064-RBL, Dkt. #16 at 8]. Applying the 4-part test established by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, __U.S.___, 129 S.Ct. 365, 374 (Slip Opinion) (2008), this Court held that permitting the forfeiture of QIN's deposit and the sale of the 20 contested parcels to A&M while QIN was waiting the resolution of a good faith dispute had a substantial likelihood of causing irreparable harm and did not serve the public interest. [*See* CV09-5064-RBL, Dkt.# 16].

argues that even if it is not exempt from the bidding process, the BIA's method for determining the price it was entitled to match was arbitrary and capricious, because the BIA failed to make clear the manner in which it would determine the high bid for each parcel.[14] QIN also claims that the BIA's failure to disclose the Tribe's right to match in the Notice of Sale invited inflated bids for the allotments, which violated QIN's right to purchase trust allotments "at fair value" pursuant to § 2216(f)(1)(B). [Dkt. #25 at 21].

QIN argues that it did not forfeit its right to purchase the 20 parcels when it failed to satisfy the purchase price within the 30-day payment period pursuant to 25 C.F.R. § 152.28(c)(2) because the BIA's regulatory authority is dated and superceded by 25 U.S.C. § 2216. [Dkt. #30].

### *3. The Government's Claims*

The Government asks that the Court deny QIN's Motion for Summary Judgment and dismiss its claims. The Government contends that the IBIA correctly rejected all arguments raised by QIN and A&M in affirming the underlying BIA action. It also argues that the IBIA's decision should not be set aside under 5 U.S.C. § 706(2)(a) because neither the BIA's actions conducting the sale nor the IBIA's decision to uphold the BIA's actions were arbitrary or capricious. [Dkt. #28]. The Government also contends that the BIA's subsequent award of the sale to A&M was not arbitrary or capricious because QIN forfeited its right to the sale when it failed to pay the bid amount within the 30-day period pursuant to 25 C.F.R. § 152.28(c)(2).

## B. Jurisdiction and Venue

Venue is proper in this Court pursuant to Title 28 U.S.C. § 1391(e). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the Administrative Procedures Act (APA), 5 U.S.C. § 702.[15]

---

[14] The BIA allegedly used "'an equitable parcel-by-parcel' comparison to arrive at the 'highest potential value'" when determining the high bid for the properties. [Dkt. #25 at 21].

[15] While 28 U.S.C. § 1331 grants the district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, it does not waive the Government's sovereign immunity. *Eagle-Picher Indus., Inc. v. United States*, 901 F.2d 1530, 1532 (10th Cir.1990). However, sovereign immunity is waived pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 702. ("An action in a court of the United States seeking relief other than money damages and stating a claim that an

Section 702 provides in pertinent part: "A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

**C. QIN's Appeal is Brought Pursuant to a Final Agency Action**

The Government contends that the Court does not have jurisdiction to hear QIN's claim because there was no final agency action at the time QIN filed its Complaint.[16] [Dkt. #28 at 17]. Under the APA, an agency action is only subject to judicial review if the action is "final." 5 U.S.C. § 704. An action's "finality" depends on "whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights and obligations have been determined or legal consequences will flow from agency action." *Port of Boston Marine Terminal v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970) (citing *ICC v. Atlantic Coast Line R. Co.*, 383 U.S. 576, 602 (1966)).

The Court holds that there were legal obligations resulting from agency action that were in effect before either QIN's Complaint or TRO were filed. QIN's right to match at its desired purchase price was invalidated by the IBIA and it is undisputed that the decision of the IBIA is a final agency action within the meaning of 5 U.S.C. § 704. The BIA's imposition of the 30-day payment period is part of the underlying IBIA decision in that it is one of the "legal consequences that flow" from it. [Dkt.# 30 at 3]. As such, QIN's appeal was brought pursuant to a final agency action and is properly before this Court.

**D. Standard of Review**

   *1. Review of Agency Action*

This Court reviews the BIA's actions under an "arbitrary and capricious" standard of review. Reviewable agency actions include "the whole or part of an agency rule, order, license, sanction, relief, or

---

agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.")

[16] The Government argues that at the time QIN filed its Complaint the "time period for submitting the remainder of the purchase price had not yet expired and the BIA had not yet formulated an intent to forfeit QIN's bid deposit" pursuant to 25 C.F.R. § 152.28(c)(2). [Dkt. #28 at 18].

the equivalent or denial thereof, or a failure to act." 5 U.S.C. § 551(13). When reviewing agency actions under the APA:

> [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. [Specifically, the Court shall] "compel agency action unlawfully withheld or unreasonably delayed; and hold unlawful and set aside agency action, findings, and conclusions found to be— arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.] 5 U.S.C. § 706(2)(A)-(C)).

The "arbitrary and capricious" standard of review under the APA is used to review decisions of the BIA. *McAlpine v. U.S.*, 112 F.3d 1429, 1436 (10th Cir., 1997).

When a district court reviews an agency's interpretation of its own regulations, the court should defer to the agency "unless [the agency's interpretation] is plainly erroneous or inconsistent with the regulation[s]." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d. 364, 369 (9th Cir. 1989) (quoting *Marathon Oil Co. v. United States*, 807 F.2d 759, 765 (9th Cir.1986) (quoting *Udall v. Tallman*, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801 (1965))).

### *2. Summary Judgment*

Both QIN and the Government have moved for summary judgment. The Government argues that QIN no longer has the right to purchase the 20 contested parcels at any price because the BIA's bidding process was neither arbitrary nor capricious and because QIN failed to comply with the regulatory payment deadline. [Dkt. #28]. QIN contends that it is entitled to purchase the 20 parcels because the BIA's bidding process was arbitrary and capricious. QIN also argues that its interest in consolidating fractionated tribal land under the Indian Land Consolidation Act (ILCA) and its subsequent amendments should supercede the determination of the Agency. [Dkt. #30].

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In short, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy*, 68 F.3d at 1221.

**E. The BIA's Process for Determining the High Bidder Was Not Arbitrary or Capricious**

*1. The BIA's Bidding Process was not Arbitrary or Capricious*

QIN alleges that the BIA's notice and prospectus of the sale failed to provide criteria by which bidders could discern how competing bids would be determined, i.e., on a "parcel-by-parcel" basis or by total package bids. [Dkt. #25 at 10, 21]. However, as the IBIA correctly pointed out, "[n]othing in the regulations requires BIA to provide this information . . . [The] BIA reserved full authority to consider bids on either basis [which is] consistent with BIA's trust responsibility to the owners of the land to obtain the highest and best value for the lands." *Quinault v. Bureau of Indian Affairs*, 48 IBIA 186, 196, 2008 WL 5539400 (I.B.I.A.). The Court affirms the IBIA's finding that the BIA's actions in the initial bidding process were not arbitrary or capricious.

*2. QIN Had to Paricipate in the Public Bidding Process to Exercise its Right to Purchase the Trust Allotments*

QIN argues that 25 U.S.C.§ 2216(f) affords it the right to preempt the open, public, bidding process for the sale of trust lands and that it should be able to purchase the parcels at "fair market value." [Dkt. #25 at 21]. Thus its argues that the BIA's determination of the purchase price QIN had to meet was arbitrary and capricious under the statute. [Dkt. #25 at 19-21]. 25 U.S.C. 2216(f) states in pertinent part that:

> before the Secretary approves an application to terminate the trust status . . . the Indian tribe with jurisdiction over the parcel shall have the opportunity . . . to match any offer contained in the application; or . . . in a case in which there is no purchase price offered, to acquire the interest in the parcel by paying the fair market value of the interest. 25 U.S.C. § 2216(f).

As the IBIA stated in its decision, "[n]othing in subsection 2216(f) . . . [entitles] the Nation to a right of first refusal to purchase for the appraised fair market value, and thus to preclude the market value from being defined in an open and competitive bidding or negotiation process." *Quinault*, 48 IBIA at 201. The Tribe's right to match prior to approval of an application to terminate trust status does not equate to a blanket right to purchase without competition. While the Tribe may indeed have the opportunity to purchase trust land at appraised fair market value, this is only true once the sale is advertised, an open bidding process is conducted and no other offers for the purchase price are made. [*Id*. at 14-16]. The IBIA's interpretation of § 2216(f) was neither arbitrary nor capricious. QIN had a statutory right to match the highest bid, but did not have the right to preempt the bidding process and purchase trust allotments at an appraised fair market value

### *3. 25 C.F.R. §§ 152.26 and 152.27 Do Not Deprive QIN of the Right to Match A&M's Bid*

A&M claims that the BIA was not required by 25 U.S.C. § 2216(f) to offer QIN the opportunity to match A&M's bid price on the 20 parcels because the seller properly "opted out" of this opportunity pursuant to 25 C.F.R. § 152.27(b)(1). [Dkt.# 5 at 3-6; Dkt. #26]. A&M claims that 25 C.F.R. §

152.27(b)(1) is not irreconcilable with QIN's statutory right to match under 25 U.S.C. § 2216(f) and that the regulation should apply in this case. [*Id*.]. A&M argues that the regulation "provides a <u>procedure</u> for implementing . . . the right to match in the context of sales of Indian trust lands" (emphasis in original) [Dkt. #5 at 4]. Subsection 152.27(b)(1), however, conditions a tribe's right to match on "the consent of the owner and when the notice of sale so states," whereas § 2216(f) provides a tribe the mandatory opportunity to match. It is well established that a statute will trump where conflicts or inconsistencies between a statute and regulation arise. *United States v. Kriesel*, 416 F.Supp.2d 1037, 1039 (W.D.Wash. 2006).[17] The IBIA has come to the same conclusion: "[w]here there are discrepancies between a BIA regulation and a later-enacted statute, the statute controls." *Bernard v. Acting Great Plains Director*, 46 IBIA 28, 42 (2007) (citing *Miller v. Rocky Mountain Regional Director*, 36 IBIA 305, 309-10 (2001)); *Prairie Island Indian Community v. Minneapolis Area Director*, 25 IBIA 187, 191 (1994)). As such, the BIA's action affording QIN a right to match pursuant to 25 U.S.C. § 2216(f) was not arbitrary or capricious, and the IBIA's decision on this point was correct.

**F. QIN's Failure to Satisfy the Purchase Price within the Administrative Process Deadline Did Not Forfeit Its Deposit or Right to Purchase the 20 Parcels**

The Government and A&M assert that QIN's failure to satisfy the remaining purchase price or file its TRO within the 30-day payment period constitute a forfeiture of its deposit and right to match on the 20 parcels pursuant to 25 C.F.R. § 152.28(c)(2). [Dkt. #26 at 2 and Dkt.# 28 at 14]. The 30-day payment period ended on February 17, 2009. QIN filed its Complaint with this Court on February 4, 2009 and filed its TRO Motion on February 18, 2009. [CV09-5064-RBL, Dkt. #9].

---

[17] The BIA has proposed regulatory changes to make 25 C.F.R. more accurately reflect the current language of 25 U.S.C. § 2216(f). Specifically, the changes to 25 C.F.R.§ 152 would "grant tribes the opportunity to purchase trust or restricted lands being proposed for transfer out of trust or to unrestricted status." 71 Fed. Reg. 45174, 45193-194 (Aug. 8, 2006).

Under 25 CFR § 152.28(c)(2) "[t]he Secretary shall award the bid and notify the apparent successful bidder that the remainder of the purchase price must be submitted within 30 days . . . [i]f the remainder of the purchase price is not paid within the time allowed, the bid will be rejected and the apparent successful bidder's 10 percent deposit will be forfeited to the landowner's use." 25 CFR § 152.28(c)(2). When reviewing an agency's interpretation of its own regulations, the Court must defer to the agency unless its interpretation is plainly erroneous or inconsistent with the regulations. *Pyramid Lake*, 882 F.2d. at 369. While the scope of the Court's review is narrow, this does not, however, preclude it from conducting a searching review of the record. *National Wildlife Federation v. National Marine Fisheries Serivce*, 524 F.3d 917, 927 (9th Cir., 2008).

### 1. *The BIA's Forfeiture of QIN's Deposit and Right to Match Was Arbitrary and Capricious*

Although the BIA forfeited QIN's deposit and right to purchase once the deadline passed, as is required under 25 CFR § 152.28(c)(2), the BIA's correspondence with QIN prior to the end of the 30-day period was materially misleading and inconsistent with the plain language of the rule. In its Jan. 23, 2009 letter to QIN that was written after A&M had filed suit with this Court, the BIA stated:

> We are uncertain at this time whether a potential injunction filed
> in federal court will interfere with the payment process for the 20
> tracts that Anderson & Middleton seek to purchase. However, the
> [6] tracts are not a subject of that action, therefore, the remainder of
> the purchase price for the . . . 6 tracts is due on or before [the 30-day
> payment deadline]. [CV09-5064-RBL, Dkt. #4, Ex. #4].

This language implies that A&M's appeal placed QIN's right to the 20 parcels in jeopardy. QIN could not be expected to satisfy the full amount outstanding on parcels of land that it could not reasonably know it was obligated to purchase. The letter states that because 6 of the tracts are not subject to the action, payment on those tracts is due in full by the 30-day deadline. The logical implication is that payment on

ORDER
Page - 13

the other 20 parcels is <u>not</u> due by the stated payment period, or, at the very least, that the due date for those parcels is now unknown. Moreover, nothing in the letter reaffirms the BIA's expectation that it receive full payment for these parcels by or before the payment date or of the consequences if full payment is not made. This was the final notice given QIN prior to the payment deadline. Because the BIA's letter made QIN's deadline for payment uncertain, and did not explain the consequences of failing to pay, the BIA acted arbitrarily and capriciously when it abruptly forfeited QIN's deposit and right to purchase at the end of the 30-day payment period.

### *2. The Purpose of the Statute Supercedes the Agency's Interpretation of the Regulations*

The plain language of 25 CFR § 152.28(c)(2) does not of itself conflict with the language or purpose of 25 U.S.C. § 2201 *et. seq.* However, based on the facts presented, the BIA's actions and interpretation of the regulation are incongruous with the underlying purpose of the statute. Permitting the BIA to forfeit QIN's deposit and right to purchase would work to circumvent the express intent of Congress to further tribal consolidation of fractionalized Indian lands under ILCA.[18]

ILCA and its subsequent amendments are remedial measures intended to further Native American interests. As the IBIA noted in its decision:

> The clear focus of [ILCA and its subsequent amendments] was to facilitate the transfer of interests in Indian trust lands to Indians and to tribal entities, not only to reduce the fractionation of Indian ownership but to perpetuate Indian ownership of the lands and to restore lands that originally were tribal lands to tribal status. The right-to-match provision of subsection 2216(f)

---

[18] The Indian Land Consolidation Act (ILCA) and the American Indian Probate Reform Act's (AIPRA) amendments to ILCA exemplify Congress' desire to promote tribal sovereignty through consolidation of fractionalized tribal interests. These acts codified what is now 25 U.S.C.§ 2201, *et seq.* "Congress enacted ILCA in 1983 to address Indian land fractionation problems . . . Further amendments to ILCA were enacted in 2000 (Public Law 106- 462). The purpose of the 2000 amendments was to prevent further fractionation of Indian trust allotments, consolidate fractional interests and their ownership into usable parcels, consolidate those interests in a manner that enhances tribal sovereignty, promote tribal self-sufficiency and self-determination, and reverse the effects of the allotment policy on Indian tribes." H.R. Rep. 108-656, P.L. 108-374, American Indian Probate Reform Act of 2004, Sept. 7, 2004.

> provides tribes with the opportunity to restore their original tribal land base. *Quinault Indian Nation v. Bureau of Indian Affairs*, 48 IBIA 186, 203, 2008 WL 5539400 (I.B.I.A.). [C09-5064-RBL, Dkt. # 4-3 at 18].

The Supreme Court has held that remedial statutes should be broadly construed to effectuate their purposes. *Bryan v. Itasca County*, 426 U.S. 373, 392 (1976). [Dkt. #25 at 17].[19] As such, § 2216(f) should be construed broadly so as to effectuate QIN's efforts to consolidate tribal lands. Under this liberal construction and given the specific circumstances of the case, deference to the agency decision to forfeit QIN's deposit and right to purchase would unduly circ2.00umvent the Congress' intent under ILCA to promote tribal consolidation of fractionalized Native American lands. The Court is not willing to prevent QIN from asserting these rights based on the fact its TRO was filed one day late.

### *III. Conclusion*

The findings of the IBIA were not arbitrary or capricious. QIN had a statutory right to match the highest bid, but did not have the right to preempt the bidding process and purchase trust allotments at an appraised fair market value. The IBIA's decision is affirmed in its entirety.

However, upon the record presented, this Court finds the BIA has failed to discharge its obligations to QIN under the Indian Land Consolidation Act, and the Agency's own administrative regulations. The BIA acted arbitrarily and capriciously when it forfeited QIN's deposit and right to purchase the 20 allotments subsequent to the IBIA decision. QIN's interest in the consolidation of tribal lands under ILCA is not served when it is precluded from purchasing the land based on a procedural

---

[19] The Ninth Circuit has held that ambiguous provisions in legislation intended to benefit Native American interests should generally be construed in the Native Americans' favor. In a case involving a tax exemption statute for Native Americans, the Court analogized its construction in favor of the tribe "to the long established principle that ambiguities used in treaties with the Indians should not be construed against the tribes. *Hoonah Indian Ass'n v. Morrison*, 170 F.3d 1223, 1228 (9th Cir.1999) (citing *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941 (1912))

technicality, when QIN made it clear prior to the deadline that it contested the process and purchase price of the sale and the BIA acknowledged that the existence of a lawsuit challenging the IBIA decision jeopardized the 30-day payment period.

As such, the BIA's forfeiture of QIN's deposit and right to purchase are vacated. It is also the Court's understanding that QIN intends to purchase the 20 trust allotments, even if it must match A&M's bid price. QIN shall have 30 days from the date of this Order to match A&M's bid on the allotments and tender the full purchase price for those parcels. QIN's $100,000.00 bond posted by order of this Court pursuant to Fed. R. Civ. P. 65 shall be returned to QIN. A&M's deposit of $439,102.60 shall be returned, and QIN's deposit shall be credited toward the purchase price of the 20 trust allotments. If QIN fails to pay the remaining balance in 30-day period, its deposit shall be forfeited and A&M will be granted the purchase rights to the 20 parcels.

QIN's Motion for Summary Judgment [Dkt. # 25] is GRANTED and the Governments Cross-Motion for Summary Judgment [Dkt. # 28] is DENIED concerning the forfeiture of QIN's deposit and right to purchase the 20 parcels. QIN's Motion for Summary Judgment is DENIED and the Government's Cross-Motion for Summary Judgment is GRANTED concerning the IBIA's decision affirming the validity of the bidding process and QIN's statutory right to match. The Temporary Restraining Order is DISSOLVED and all other claims are DISMISSED.

IT IS SO ORDERED.

Dated this 4th day of August, 2009

*/s/ Ronald B. Leighton*

RONALD B. LEIGHTON

ORDER
Page - 16

UNITED STATES DISTRICT JUDGE

ORDER
Page - 17